Weight, J.,
delivered the opinion of the Court.
*681 This is an action of replevin for a slave, Mary, in which the defendant had judgment, and the plaintiif has appealed in error to this Court.
The facts of the case are these: One Landis, a constable of Gribson county, had in his hands for collection, three executions, issued by a justice of the peace, against R. P. Raines; and on the 14th of June, 1858, he levied two of them on the slave, Mary — as the property of Raines — and took delivery bonds, for the forthcoming of the property for sale, on the 5th of July, afterwards. Afterwards, he also levied the remaining execution.
Landis proved that on Saturday, the 26th of June, 1858, James Blakemore, a constable of said county, came to his house in Trenton, late in the evening, and requested him to walk down to Mr. Raines’ office — that the plaintiff had agreed to purchase the slave, Mary— but that Mr. Raines refused to sell her unless Mr. Lan-dis would agree to it. Landis then went down, and found the plaintiff was willing to purchase the slave at $800, but that he, Raines, would not sell her, unless he, Landis, was willing. To this Landis replied that he was of opinion that he had no right to say anything about it, until the delivery bonds were forfeited; that, after some conversation, Landis wrote a. bill of sale, conveying the slave to plaintiff, at the price of $800 — which Raines signed and executed; and Landis attested it as a witness, and it was duly registered; that plaintiff received the slave, and two days afterwards paid Landis $550 of her price, which was applied by him to the three executions in his hands — satisfying one, and leaving some balance on the other two — and the residue of the *682 money went to Blakemore, the other constable, who had executions against Raines, and to plaintiff himself, who, also, had a judgment against Raines.
Landis further proved that he told Raines he had no right to consent or object to the sale to plaintiff; that he was afraid if he did consent, it would discharge the security in the delivery bonds for the balance of the debts. Raines then asked him how much money would do him at that time, and he replied $525. Raines then told him to wrrite the bill of sale — which he did — and plaintiff agreed to pay him, and did pay him, the $550, and the same was applied as before stated.
Landis made the following endorsement on one of the executions, and signed the same officially, to-wit:
“June 28, 185,8. Satisfied in full by proceeds of negro girl sold B. Sandeford.
B. LANDIS, C. G. C.”
And on the same day he placed the proper credits on the other executions, showing that the money had come from plaintiff, and was the proceeds of the sale of said slave; and also signed the same officially.
It further appears that Sundry judgments were rendered against said Raines in the Circuit Court of Gibson county, upon which executions were issued and placed in the hands of the sheriff of that county, on the 20th of April, 1858, tested on the third Monday in March, of that year, and on the 16th of July, in the same year, were by him levied on said slave — then in the hands of the plaintiff — and on the i4th of August, af-terwards, the said sheriff, by virtue of said last mentioned executions and levies, sold and delivered said *683 slave to the defendant, at the price of $700. The plaintiif forbid the sale.
The Circuit Judge, upon 'these facts, charged the jury that, whether the sale made by Raines to the plaintiff, was with, or without, Landis’ consent, was immaterial, and that the defendant had the better title.
We should have stated that the plaintiif failed' to read or produce any judgments in support of the justice’s executions under which he claims to have pur-> chased; and that the judgments and' executions upon Which the defendant relied to maintain his title were rea.d.
The question now is, whether the judgment of the Circuit Court can be maintained ? And we think it can. Beyond all question, if the sale to the plaintiff is to be regarded merely as a sale by Raines, and not the official act of the constable, the plaintiff, as against the defendant, has no title, since the teste of the executions from the Circuit Court entirely overreached his purchase. Daley v. Perry and Shelton, 9 Yer., 442.
It is not necessary here for us to consider the question, whether an officer may, with the consent of the debtor, sell property levied on. at private sale. (7 Bac. Ab., Title Sheriff N., 215; 1 Bos. and Pull., 360; 5 Hum., 577.) Nor as to his power, even with the consent of the debtor, to sell, after, he has taken a delivery bond, and before the restoration of the property to him again on the day of sale. (3 Hum., 532; 4 Hum., 383: 2 Sneed, 93.) Nor whether the Circuit Judge should have submitted to the jury the question, whether, upon the facts of this case, this sale was not to be regarded as made by the officer, and not by *684 Raines; because, we think, the failure of the plaintiff to exhibit and read the judgments in support of the executions under which he claimed, is fatal to his title.
It is laid down, that where a purchaser, through ■sale under a judgment and execution, sues, as such, to recover the property purchased, he must, in general, produce the judgment, execution, &c., for they are parts of his title. 4 Philips on Ev., Cowen and Hill’s Notes, part 2, 789, 790; Carter v. Simpson, 7 Johns. R., 535; Yates v. St. John et al., 12 Wend., 74. The case in Wendell is a direct authority. The rule applies to both real and personal estate.
A purchaser of personal' property at sheriff’s or constable’s sale, cannot maintain an action of trover or re-plevin -against the plaintiff who subsequently causes the same property to be sold by virtue of a judgment and execution in his favor, without proving the judgment, as well as the execution, under which his purchase was made. 12 Wend., 74.
The judgment of the Circuit Court will be affirmed.